## BENT, *Appellant;* v. HART.

Corporation: A TRANSACTION HELD NOT TO BE A WITHDRAWAL OF COR-PORATE ASSETS BY STOCKHOLDERS. As part of a contract of reinsurance entered into between two life insurance companies, the reinsuring company agreed to issue its own stock in exchange for stock of the reinsured company to all such stockholders of the latter as should apply for the same within a specified time, and then to pay for its own stock so issued the par value thereof, if demanded by the stockholders within a further specified time. In consideration of the liabilities incurred by the reinsuring company under the contract, the other company transferred to it all of its assets, and out of these such of the stockholders of the reinsured company as chose to avail themselves of the contract were paid. An action having been brought by a receiver of the reinsured company sub-sequently appointed, to recover of one of these stockholders the amount so paid him; *Held,* that it could not be maintained.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

This was a suit brought by Silas Bent, as receiver of the St. Louis Mutual Life Insurance Company, an insolvent corporation, against Oliver A. Hart, formerly a stockholder therein. The petition alleged, in substance, that the St. Louis Mutual and the Mound City Life Insurance Companies, on the 10th day of December, 1873, entered into a

contract, whereby the St. Louis Mutual transferred to the Mound City all its assets of every description, and, in consideration of the transfer, the Mound City assumed all the liabilities and undertook and agreed to reinsure all the outstanding risks of the St. Louis Mutual, and further agreed to issue its own stock, dollar for dollar, in exchange for stock of the St. Louis Mutual, to all such stockholders of the St. Louis Mutual as should apply for the same within twenty days, and further, to redeem the stock so issued by paying for it the par value thereof, if demanded by the stockholder within twelve months; that at the time this contract was made the St. Louis Mutual was insolvent and its stock worthless, and that fact was well known to the stockholders; that the exchange and redemption of stock was merely a plan and contrivance whereby the stockholders of the St. Louis Mutual appropriated to their own use and in redemption of the capital stock of the St. Louis Mutual a portion of the assets of that company in fraud of its creditors, and that the payments made by the Mound City in redemption of stock were made out of funds received by it from the St. Louis Mutual; that defendant was at the time the owner of fifty-five shares of the paid up stock of the St. Louis Mutual of the par value of $5,500, and availed himself of the foregoing contract, and received from the Mound City the sum of $5,500; that the Mound City was insolvent and unable to pay the debts of the St. Louis Mutual. The petition further alleged that at the time this contract was made, proceedings, instituted by the State Insurance Commissioner for winding up the St. Louis Mutual, were pending, and that they were dismissed upon the consummation of the contract; and that plaintiff was appointed receiver in a new proceeding subsequently instituted. The prayer of the petition was, that defendant be compelled to pay plaintiff, as receiver, the said sum of $5,500. Defendant demurred generally to this petition, and the circuit court of the city of St. Louis sus-

tained the demurrer and entered judgment for defendant. The court of appeals affirmed this judgment.

*Thos. T. Gantt* and *John M. Glover* for appellant.

The capital stock of a corporation is a trust fund for the payment of its creditors. *Mumma v. Potomac Co*, 8 Pet. 281; *Wood v. Dummer*, 3 Mason 308; *Wright v. Petrie*, 1 Sm. & M. Ch. 319; *Nevitt v. Bank*, 6 Sm. & M. 513; *Hightower v. Thornton*, 8 Ga. 486; *Nathan v. Whitlock*, 3 Edws. Ch. 215; *Payne v. Bullard*, 23 Miss. 88; *Vose v. Grant*, 15 Mass. 505. In the absence of statute or charter power, the stock cannot be divided among the stockholders, even though the corporation be solvent, except upon the final winding up of its affairs for the purpose of ceasing business. *Mather v. Bates*, 2 N. Y. Leg. Obs. 213; *Pettibone v. Hawkins*, 2 N. Y. Leg. Obs. 210; *Painesville R. R. Co. v. King*, 17 Ohio St. 534. Though there be such a statutory or charter power, if the corporation makes a dividend of its capital stock among its shareholders, not leaving corporate funds enough to pay outstanding debts, the receiving shareholder can be compelled to refund for the benefit of creditors. *Scott v. Ins. Co.*, 7 Paige 198; *Bedford R. R. Co. v. Bowser*, 48 Pa. St. 28; 2 N. Y. Leg. Obs. 213; 2 N. Y. Leg. Obs. 210; 5 Sm. & M. 428; *Mann v. Pentz*, 2 Sandf. Ch. 257; *Lauman v. R. R. Co.*, 30 Pa. St. 42; *Woods v. Dummer*, 3 Mason 308. Equity will follow the trust fund, or its proceeds into whatsoever hands it comes, except those of a purchaser without notice for value, and compel its application to the payment of the corporate debts. 2 Story Eq., 1252; Angel & Ames, 540 to 546; 1 Kid on Corp., 273; *Briggs v. Penniman*, 8 Cow. 387; *Slee v. Bloom*, 19 John. 456; *Haslett v. Wotherspoon*, 2 Rich. Eq. 395; *Allen v. Montgomery R. R. Co.*, 11 Ala. 437; *Caldwell v. Montgomery*, 8 Ga. 106; *Thomas v. Brinsfield*, 7 Ga. 154; 8. Ga. 488. It does not follow that because the transfer to the Mound City has not been set aside and is not alleged in

this petition to be invalid, that the plaintiff cannot recover of the defendant. *Chase v. Walker*, 26 Me. 555; *Prince v. Shepard*, 9 Pick. 176. Should the property charged with the trust of creditors be sold in fraud of the trust to an innocent purchaser for value, and afterward find its way back to the hands of him who first held as trustee, the trust again attaches. It is an error to speak of all the assets of the St. Louis Mutual as having been bought by the Mound City. The $100,000 worth of assets which passed from the St. Louis Mutual to the Mound City, and through it as a conduit by an already provided channel to the pockets of the St. Louis Mutual shareholders, never was the property of the Mound City to do with it what it pleased. It belonged to the shareholders from the start. Does not the St. Louis Mutual really pay the $100,000 to the shareholders? What is the difference between saying take my assets less $100,000 which I pay my shareholders, and take my assets and pay my shareholders $100,000? None on earth! And yet no man could deny that the former was a fraud.

*H. A. & A. C. Clover* and *Cline, Jamison & Day* for respondent.

The contract of reassurance was entered into in the best of faith on the part of both companies. It had received the sanction of the Insurance Commissioner of the State and of the St. Louis circuit court. It was deemed by all the parties at the time *infra vires* and a proper arrangement. The Mound City proceeded, and for years continued to execute the contract. Such a condition of affairs thereafter existed as made it impossible to annul or rescind the contract if *ultra vires*, even though the Mound City became afterward incapable of completely executing it. The St. Louis Mutual might have its action on the contract, and that was all; just as the Mound City might have its action against the St. Louis Mutual for breach of the contract on its part. All moneys of whatever character paid to the Mound City became its own proper moneys,

to be dealt with and disposed of by it at its will and pleas-
ure.    Hence, if it were true that the payments made to the
stockholders were made  out of the moneys received from
the St. Louis Mutual, it would  make  no  difference.    Be-
sides, the policy holders sanctioned and  acquiesced in this
contract  from  1873  to  1879.    *Qui  tacet  consentire  videtur.*
The doctrine of fraudulent transactions *per interpositam per-*
*sonam* has no relation  whatever to the case.    If there was
no  fraud  on the  part of the  Mound  City, there  could be
none on the part of its transferee, the defendant.    The in-
superable  difficulty in the case is, that the  receiver of the
St. Louis Mutual cannot recover against the  Mound City ;
and if he cannot recover against the  company itself, upon
what principle  can  it be  maintained that he  can  recover
against this defendant ?

HENRY, J.—This is not a suit to set  aside the contract
made  between the St. Louis Mutual and the Mound City,
but to recover from  Hart the amount  paid to  him by the
latter for the shares of stock in the Mound City, which he
had received in exchange for an equal amount of stock of
the St. Louis Mutual.    The agreement between the com-
panies was, that the stockholders of the St. Louis Mutual,
on demand, should receive an amount of the stock of  the
Mound City, equal to that held by them respectively in the
St. Louis Mutual, and that within  a given  period, on de-
mand, the Mound  City would pay them in  cash the par
value of the stock of the  latter.    Of this stipulation Hart
availed himself, and this suit  is to recover from  him the
amount so received by him.    In consideration of the fore-
going, and other stipulations, among them  the agreement
of the Mound City to pay all the liabilities of the St. Louis
Mutual, all the assets of the latter company were sold and
delivered to the Mound City.

Hart's stock  in the St. Louis Mutual was  not  assets,
but a liability of that company, and its other creditors had
no claim whatever against a stockholder who had paid for

his stock, in the event of a deficiency of assets to pay the debts of the company. The Mound City not only assumed the liabilities of the St. Louis Mutual to its other creditors, but also its obligations to its stockholders. Conceding, and in this proceeding we are to assume, that the agreement between the two companies was a valid contract, what possible right has the receiver of the St. Louis Mutual to recover this money from Hart? He had ceased to be a stockholder in that company, and under and by virtue of the agreement, had become a stockholder in the Mound City, and there is no privity between him and the company or creditors represented by this plaintiff. Whether his stock in the Mound City was paid for out of the identical assets received by the Mound City from the St. Louis Mutual, or out of assets previously owned by the former, can make no difference, since by a valid contract the money and all other assets of the St. Louis Mutual became the property of the Mound City, and any unwarranted disposition of its assets is a matter of no concern to any one but the creditors and stockholders of the Mound City. Whatever may be the liability of the defendant to the creditors of the Mound City, and this includes all the creditors of the St. Louis Mutual, we are satisfied that he is not liable to the receiver of the latter company. Until that contract shall have been attacked, and set aside for fraud or other infirmity, the Mound City must be regarded as the legal owner of all the assets of the St. Louis Mutual, liable, under the contract, for all the debts of the latter. By that contract its assets are equally bound for the payment of the liabilities of both companies, and any payment by the Mound City to its stockholders, for stock owned by them, if there be a deficiency of assets to meet its liabilities to its creditors, would constitute a cause of action against such stockholder, on which the receiver of the Mound City, and not the receiver of the St. Louis Mutual, is the proper party to sue. The opinion delivered by the court of appeals is so lucid and able an exposition of the views we

entertain on the subject therein discussed, that we are not inclined to protract this discussion. The judgment is affirmed. All concur, except SHERWOOD, C. J., who dissents.